**Affirmed and Opinion Filed August 30, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01582-CV

### THE ESTATE OF R.H. "JACK" FINNEY, JR., DECEASED

On Appeal from the County Court at Law
Hunt County, Texas
Trial Court Cause No. 16,563

## OPINION

Before Justices Francis, Lang, and Evans
Opinion by Justice Lang

This is an appeal of a probate proceeding arising out of the Estate of R.H. "Jack" Finney, Jr., deceased. In her petition for declaratory judgment, Jean Townsend Gibbs, Finney's daughter, claimed Amanda Kay Bickley was not entitled to the contractual bequests Finney made to her because she failed to comply with the conditions precedent stated in the will. After a jury trial, the jury found that Bickley complied with the conditions precedent. Gibbs appeals the trial court's judgment in favor of Bickley.

On appeal, Gibbs raises five issues arguing the trial court erred when it: (1) excluded evidence of lifetime gifts, transfers, benefits, and remuneration that Finney gave Bickley; (2) denied Gibbs's motion for new trial because Bickley's jury argument was improper and incurable; (3) overruled Gibbs's objections to testimony, which she claims violate Texas Rule of Evidence 802; (4) overruled Gibbs's objections to testimony, which she claims violate (a) Texas Rule of Evidence 601(b), the Dead Man's Rule, and (b) the Parol Evidence Rule; and (5) denied

Gibbs's motions for judgment notwithstanding the verdict and new trial because there was legally and factually insufficient evidence to support the jury's answer to question no. 1.

We conclude Gibbs has not shown that the trial court erred when it excluded evidence of lifetime gifts, transfers, benefits, and remuneration that Finney gave to Bickley. Also, we conclude that even if the trial court erred when it overruled Gibbs's hearsay and parol evidence objections, Gibbs has not shown that the errors were reasonably calculated to cause and probably did cause the rendition of an improper judgment. In addition, Gibbs waived her complaint that the trial court erred when it overruled her objections to testimony that she claims violates the Dead Man's Rule. Finally, we conclude the evidence is legally and factually sufficient to support the jury's answer to question no. 1. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Finney executed his will on February 18, 2008. He died on January 1, 2010. Paragraph VI of the will included a contractual bequest and stated the following:

> The following bequest in my Will, and no other bequest in my Will, is based on a contract. In that contract, AMANDA BICKLEY and I agree that in this Will I would, and I do leave her One Million and xx/100 Dollars ($1,000,000.00) to be paid as set forth below. I further promised that I would leave, and I have left this Will unrevoked.

Paragraph VII of Finney's will, specifies the following conditions precedent to Bickley receiving the million dollars:

> I give, devise, and bequeath AMANDA BICKLEY this property on the express condition that she perform the following acts: reside with and care for me until my death. If AMANDA BICKLEY fails to perform fully according to these promises as of the date of my death, then the provisions of this bequest will not take effect, the gifts of my property described in this and all bequests to AMANDA BICKLEY in this my Last Will and Testament, will lapse, and the property, otherwise bequeathed to AMANDA BICKLEY, I give, devise and bequeath to my daughter JEAN FINNEY TOWNSEND [GIBBS]. Except as specified in this bequest, I have entered into no other contract or promise to make any Will or not to revoke any Will.

–2–

After Finney's will was admitted to probate, Gibbs filed a petition for declaratory judgment, alleging that Bickley had not complied with the terms of the contractual bequest. Bickley filed a general denial and asserted affirmative defenses, including waiver and estoppel. The matter was tried before a jury. At the close of evidence, Gibbs moved for a directed verdict, which the trial court denied and the jury was charged. Then, the jury responded affirmatively to jury question no. 1, which states:

> Did Amanda Bickley comply with Section VII of [Finney's] Will?
>
> You are instructed that the intention of the testator must be found, in the last analysis, in the words of the Will. You may consider Jack Finney's situation, the circumstances existing when the Will was executed, and other material facts existing at the time the Will was executed to determine the sense in which Finney used the words in paragraph VII.

The trial court signed a judgment that awarded Bickley the bequest in Finney's will. Gibbs filed a motion for new trial, which the trial court denied.

## II. EXCLUSION AND ADMISSION OF EVIDENCE

In issues one, three, and four, Gibbs argues the trial court erred when it excluded and admitted certain evidence.

### A. Standard of Review

The admission or exclusion of evidence is reviewed under an abuse of discretion standard. *See Enbridge Pipelines (E.Tex.) L.P. v. Avinger Timber, L.L.C.*, 386 S.W.3d 256, 262 (Tex. 2012). A judgment will not be reversed based on the admission or exclusion of evidence unless the appellant establishes that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). When reviewing whether evidence was properly admitted or excluded, the appellate court must review the entire record. *See State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

Reversible error does not usually occur in connection with evidentiary rulings unless the appellant demonstrates the whole case turned on the particular evidence excluded or admitted. *Dudley v. Humana Hosp. Corp.*, 817 S.W.2d 124, 126 (Tex. App.—Houston [14th Dist.] 1991, no writ). However, "[I]t is not necessary for the complaining party to prove that 'but for' the exclusion of evidence, a different judgment would necessarily have resulted." *McCraw*, 828 S.W.2d at 758. The complaining party must only show "that the exclusion of evidence probably resulted in the rendition of an improper judgment." *McCraw*, 828 S.W.2d at 758. The exclusion or admission is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). If erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful. *Reliance Steel*, 267 S.W.3d at 873.

### B. Exclusion of Gift Evidence

In issue one, Gibbs argues the trial court erred when it excluded evidence of lifetime gifts, transfers, benefits, and remuneration that Finney gave Bickley. She claims the exclusion of this evidence was error because it was relevant to question no. 1 of the trial court's jury charge and to Bickley's affirmative defenses of estoppel and waiver. She also contends the exclusion of this evidence misled the jury and caused the rendition of an improper judgment because the jury believed Bickley did not receive any benefits from Finney during their three-year relationship. Bickley responds that the trial court specifically stated the evidence was inadmissible because the risk of unfair prejudice outweighed any probative value. However, Bickley claims that, on appeal, Gibbs has not addressed this basis for excluding the evidence at trial.

### 1. Applicable Law

Texas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Texas Rule of Evidence 402 states that "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is not admissible." TEX. R. EVID. 402. However, pursuant to Texas Rule of Evidence 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *see Coastal Oil & Gas Co. v. Garza Energy Trust*, 268 S.W.3d 1, 48 (Tex. 2008). Rule 403 favors the admission of evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Mason v. Tex. Dep't of Family Protective Servs.*, No. 03-11-00205-CV, 2012 WL 1810620, *14 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.);[1] *Murray v. Tex. Dep't of Family & Protective Servs.*, 294 S.W.3d 360, 368 (Tex. App.—Austin 2009, no pet.); *In re K.Y.*, 273 S.W.3d 703, 710 (Tex. App.—Houston [14th Dist.] 2008, no pet.). To exclude evidence under rule 403 is an extraordinary remedy that must be used sparingly. *LRS Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 698 (Tex. App.—Dallas 1992, writ denied); *Mason*, 2012 WL 1810620, at *14; *Murray*, 294 S.W.3d at 368.

### 2. Application of the Law to the Facts

Before trial, Bickley filed a motion in limine, arguing, in part, that any evidence of lifetime gifts, transfers, benefits, and remuneration that Finney gave Bickley was inadmissible, irrelevant, and prejudicial, and requested a hearing outside the presence of the jury to determine the admissibility of that evidence before it was presented to the jury. In a letter to the parties, the

---

[1] "All opinions and memorandum opinions in civil cases issued after [January 1, 2003] have precedential value." TEX. R. APP. P. 47.2 cmt., 47.7 cmt.

trial court granted that portion of the motion in limine and stated "It is not readily apparent to the Court that this evidence would assist the jury in determining the meaning of the terms of the will. These matters must be addressed outside the presence of the jury." Gibbs filed a motion to reconsider, which the trial court denied by letter, stating, in part,

> At this time, and not having heard the evidence to be introduced at trial, the Court believes that this evidence is more prejudicial than probative. This issue must be taken up outside the presence of the jury so the Court can weigh the state of the evidence at that time.

After opening arguments, Gibbs sought permission to introduce this evidence. Again, the trial court stated

> [T]he Court will consider it at that time after I've heard the evidence from both sides. . . . I can't make a decision on whether I'm going to let it in until I hear the evidence . . . because it is prejudicial. There's no question it's prejudicial. And right now, not having heard the evidence, I believe it's more prejudicial than it is probative.

During the trial, Gibbs sought a ruling on the admissibility of the evidence relating to the lifetime gifts, transfers, benefits, and remuneration that Finney gave Bickley and made two separate offers of proof. After each offer of proof, the trial court stated "the Court will stand by its prior ruling."

The majority of Gibbs's arguments pertain to the relevancy of the evidence under Texas Rule of Evidence 401. The only argument Gibbs makes with regard to the prejudicial nature of the evidence and rule 403 is

> Excluding evidence of the myriad of expensive gifts and benefits [Finney] gave to [Bickley] during their three[-]year relationship misled the jury into believing that which everyone in the courtroom, except the jury, knew was completely false; that is, [Bickley] received no payment or benefit whatsoever during her three[-]year relationship with [Finney]. Any prejudice that may arguably befall [Bickley] by the introduction of the "gift" evidence is clearly outweighed by the relevancy of the evidence and could have been lessened or eliminated by an appropriate instruction from the Court. [footnote containing citation to Tex. R. Evid. 403.] This error, when considering the totality of the evidence, probably caused the rendition of an improper judgment and obviously resulted in harm to [Gibbs].

–6–

With the exception of a single citation to Texas Rule of Evidence 403, Gibbs provides no legal authority or citations to specific portions of the record in support of her contention. Nor does Gibbs provide an analysis demonstrating how the trial court abused its discretion when balancing the probative value of the evidence against the risk of unfair prejudice. Accordingly, we conclude Gibbs has not shown that the trial court erred when it excluded evidence of lifetime gifts, transfers, benefits, and remuneration that Finney gave Bickley.

Issue one is decided against Gibbs.

### C. Admission of Hearsay Evidence—Texas Rule of Evidence 801

In issue three, Gibbs argues the trial court erred when it overruled her objections to testimony, which she claims violates Texas Rule of Evidence 802. She contends that the testimony was offered by Bickley to prove that Bickley performed the conditions precedent contained in Finney's will because Finney had stated as much to others. As a result, she asserts these hearsay statements were offered to prove the truth of the matter. Further, Gibbs argues that Bickley failed to show that Finney's then existing mental state was relevant. Bickley responds that the testimony was admissible under the "The Existing Mental, Emotional, or Physical Condition" and "Statement Against Interest" exceptions to the hearsay rule.

### 1. Applicable Law

Texas Rule of Evidence 801(a) provides that a "statement" is "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." TEX. R. EVID. 801(a); *see also Austin v. Shampine*, 948 S.W.2d 900, 911 (Tex. App.—Texarkana 1997, no writ). "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d); *Austin*, 948 S.W.2d at 911. Rule 802 states that

"[h]earsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 802.

## 2. Application of the Law to the Facts

Gibbs argues the trial court erred when it admitted, over her hearsay objection, the following testimony by Thomas Johnson:

| | |
|---|---|
| Bickley's Counsel: | And what did [Finney] say? |
| Gibb's Counsel: | Your Honor, I'm going to make a hearsay objection. |
| Trial Court: | As to Mr. Finney's statement? |
| Gibb's's Counsel: | Yes. |
| Trial Court: | Overruled. |
| Johnson: | [Finney] said that—that [Bickley] was—or [Bickley] was to get a million dollars upon his death for taking care of him. |

Also, Gibbs contends the following testimony by John Terry Turner was improper hearsay:

| | |
|---|---|
| Bickley's Counsel: | Okay. And what did [Finney] ask you? |
| Gibbs's Counsel: | Your Honor, we object to hearsay of what Mr. Finney told Mr. Turner. |
| . . . . | |
| Gibbs's Counsel: | We do not believe that it's subject to the—I believe the Dead Man's Rule on [sic] applies to parties, so obviously, Dead Man's Rule doesn't—doesn't apply here, but the hearsay rule does apply to—to the extent that he is asserting statements of Mr. Finney to prove the mat—truth of the matter asserted. |
| Bickley's Counsel: | Not the truth of the matter asserted, just what [Finney] said. If—if what [Gibbs's counsel] said was true, then all of—half of the witnesses he's called over the last week and a half wouldn't be able to testify. |
| Trial Court: | All right. Overruled. |

–8–

| | |
|---|---|
| Gibbs's Counsel: | May we have a running objection on any additional hearsay statements that [Turner] may testify to of Mr. Finney? |
| Trial Court: | Yes |

. . . .

| | |
|---|---|
| Bickley's Counsel: | How did [Finney] introduce [Bickley] to these people? |
| Turner: | He introduced [Bickley] as, "This is Mandy. She's going to take care of me to—until I die. And when I die, she gets a million dollars." |

Gibbs maintains the following testimony by Royce Glen Steed was improper hearsay:

| | |
|---|---|
| Bickley's Counsel: | Did [Finney] tell you the amount of the money? |
| Gibbs's Counsel: | Your Honor, I'm going to now object on the basis of [Gibbs's] Trial Objection Number One [as to hearsay], and we would like a running objection with [Steed] as to any questions that attempt to solicit testimony from [Steed] about what [] Finney may have said to him. |
| Trial Court: | All right. Your objection on the basis of Trial Objection Number One is overruled and you are allowed a running objection throughout this witness's testimony, as you've stated. |

. . . .

| | |
|---|---|
| Bickley's Counsel: | Tell the jury what [] Finney told you in April 2009. |
| Steed: | [Finney] told me that he planned to leave a million dollars to Ms. [Bickley]. |

. . . .

| | |
|---|---|
| Bickley's Counsel: | Okay. Did [Finney] say why he was leaving [Bickley] a million dollars? |
| Steed: | [Finney] said because [Bickley] was taking care of him. |

Further, Gibbs argues the following testimony by Pamela Ann Ramey, which was admitted over her objection, was inadmissible hearsay:

| | |
|---|---|
| Bickley's Counsel: | What did [Finney] tell you? |

| | |
|---|---|
| Ramey: | [Finney] told me when he passed away that [Bickley] was getting a million dollars. |

. . . .

| | |
|---|---|
| Bickley's Counsel: | Did Mr. Finney describe to you that Amanda Bickley was residing with him? |
| Ramey: | Yes. |
| Bickley's Counsel: | Did [Finney] describe to you that Amanda Bickley was caring for him? |
| Ramey: | Yes. |
| Bickley's Counsel: | Okay.  Did [Finney] ever tell you what he thought about her as a caretaker? |
| Ramey: | Yes. |
| Bickley's Counsel: | What did [Finney] tell you? |
| Ramey: | He told me that [Bickley] did every—his words, "everything for her—for him." |

. . . .

| | |
|---|---|
| Bickley's Counsel: | Now, did [Finney] ever tell you that he was dissatisfied about Amanda Bickley's care for him? |
| Ramey: | No, sir. |
| Bickley's Counsel: | Did [Finney] ever tell you that he was satisfied [with] her care for him? |
| Ramey: | Yes, sir. |
| Bickley's Counsel: | And was that one occasion or more than one? |
| Ramey: | More than one. |

. . . .

| | |
|---|---|
| Bickley's Counsel: | As far as Amanda Bickley and his—his relationship with her, did he ever tell you anything negative about his relationship with Amanda Bickley? |
| Ramey: | No, sir. |

. . . .

Bickely's Counsel: Did [Finney] ever tell you he encouraged [Bickley's close relationship with her children]?

Ramey: Yes.

. . . .

Bickley's Counsel: Did [Finney] ever tell you [Bickley] was spending too much time with her children?

Ramey: No.

. . . .

Bickley's Counsel: [About six months before he died,] [d]id [Finney] ever express any concern to you about anything involving his Estate being a problem upon his death?

Ramey: Yes, sir.

Bickley's Counsel: What did [Finney] tell you about that?

Ramey: [Finney] told me it was going to be a really big fight.

Bickley's Counsel: And what did [Finney] say would cause the fight?

Ramey: [Finney] said that it was going to be a really big fight, and his—his daughter did—didn't want [Bickley] to get anything.

. . . .

Bickley's Counsel: Tell the jury what [Finney] told [your husband less than a week before Finney died].

Ramey: He—he—he told my husband that—that [Bickley], when he died, was going to get a million dollars. And he told my husband not to get used to driving that Escalade, because it also went to [Bickley].

. . . .

Bickley's Counsel: Did you hear Mr. Finney that day tell anything to your husband about the type of work that [Bickley] did for him?

Ramey: Yes.

Bickley's Counsel: What did [Finney] tell [your husband]?

. . . .

–11–

Ramey: Okay. [Finney] was telling my husband that no, he didn't need him, [Bickley] cleaned the fireplace out and brought the logs in.

Bickley's Counsel: Did [Finney]—did he tell you—did he make any other statements to your husband about the thing—in your presence, of the things that [Bickley] did for him?

Ramey: Yes. Well, he—not specifics. [Finney] said [Bickley]—he said, "She does everything."

. . . .

Bickley's Counsel: Tell the jury whether or not [Finney] had negative things to say about Amanda Bickley. Or was [Finney] bragging about Amanda Bickley?

Ramey: [Finney] was bragging.

. . . .

Bickley's Counsel: The drive from [Greenville] to Paris, [Finney] was talking about Amanda Bickley?

Ramey: (Moving head up and down.)

Reporter: Is that a yes?

Bickley's Counsel: Was it positive or negative?

Ramey: Yes. I'm sorry.

Ramey: Positive.

. . . .

Bickley's Counsel: [The night before Finney died,] tell the jury what [Finney] said about his fireplace.

Ramey: [Finney] just called just joking, saying he wanted my husband to come over and clean it out. And I said, "Okay, Jack. We'll do it." And I said, "That's no big deal." And [Finney] said, "No. I'm joking. [Bickley's] bringing the wood in right now."

. . . .

Bickley's Counsel: [The night before Finney died,] [d]id [Finney] make any statement to you, positive or negative, about [Bickley] in that conversation?

| | |
|---|---|
| Ramey: | Yes. |
| Bickley's Counsel: | What did [Finney] tell you? |
| Ramey: | [Finney] said that, "[Bickley] is bringing in the wood right now. She—she does everything." |

. . . .

| | |
|---|---|
| Bickley's Counsel: | Okay. Were you aware from what Mr. Finney told you that Amanda Bickley was gone about every other weekend? |
| Ramey: | Yes, sir. |
| Bickley's Counsel: | Do you know from what [Finney] told you whether or not that was consistent from the first—when you met him? |
| Ramey: | Yes. |

Finally, Gibbs complains that the following testimony by Bickley, which was not objected to, was inadmissible hearsay:

| | |
|---|---|
| Bickley's Counsel: | Okay. From January of '07 until the date [Finney] died, did he ever tell you that he was dissatisfied with your care? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone ever tell you [Finney] was dissatisfied with your care? |
| Bickley: | No. |

. . . .

| | |
|---|---|
| Bickley's Counsel: | Okay. Did Jack Finney ever tell you that he was dissatisfied with the amount of time that you were—were residing with him? |
| Bickley: | No. |
| Bickley's Counsel: | Did Jack Finney ever complain to you about your lack of attention to him? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone ever tell you that? |
| Bickley: | No. |

| | |
|---|---|
| Bickley's Counsel: | Did [Finney] ever complain to you during this same period of time about your being there, but not there, like you were in the room, but you were doing something else? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone ever complain to you about that— |
| Bickley: | No. |
| Bickley's Counsel: | [N]ow did Jack Finney during that time ever complain to you about being mean to him? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone else ever tell you that he was complaining about you being mean to him? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone ever tell you that [Finney] did not—did Jack Finney ever tell you that he did not trust you? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone ever tell you during [Finney's] lifetime that he did not trust you? |
| Bickley: | No. |
| Bickley's Counsel: | Did Jack Finney ever tell you that he was upset with you because you spoke rudely to him? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone during [Finney's] lifetime ever tell you that? |
| Bickley: | No. |
| Bickley's Counsel: | Did Jack Finney ever complaint about not having any food to eat when you were not there? |
| Bickley: | No. |
| Bickley's Counsel: | Did anyone ever complain to you about that? |
| Bickley: | No. |

. . . .

–14–

| | |
|---|---|
| Bickley's Counsel: | Now, you—during the three years you were with him, you heard Jack Finney tell other people in your presence you were doing a good job; is that correct? |
| Bickley: | Yes. |
| Bickely's Counsel: | Did Jack Finney ever tell you that you were not doing a good job? |
| Bickley: | No. |
| Bickley's Counsel: | Did Jack Finney ever tell you, you needed to do more? |
| Bickley: | No. |

Further, Bickley testified that she was with Finney from December 26, 2009 through January 1, 2010, and Finney did not state that he was upset with her during that time.

Initially, we note that we cannot find and Gibbs has not shown us that Bickley's complained of testimony was objected to at trial. Texas Rule of Appellate Procedure 33.1 establishes the prerequisites for preserving an appellate complaint. TEX. R. APP. P. 33.1. To preserve a point for appellate review, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity, unless the grounds are apparent from the context, obtain a ruling on the complaint, and comply with the rules of evidence or procedure. TEX. R. APP. P. 33.1. Accordingly, we conclude that Gibbs has not preserved for appeal her complaint that the trial court erred when it admitted the above testimony by Bickley.

Next, we note that Gibbs must establish both that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See McCraw*, 828 S.W.2d at 757. However, Gibbs provides only the following argument to demonstrate the second part of this test:

> The above statements were offered by [Bickley] in order to prove the truth of the matter asserted by [Finney]. [Bickley] attempts, by such statements, to prove that she performed the conditions precedent contained in the Will because [Finney] stated as much. This is exactly the type of evidence the hearsay rules are intended

–15–

to protect against because [Finney] is not available to be brought to testify in court where he may be placed under oath and cross-examined regarding his statements.
. . .

Clearly, the objected-to hearsay testimony was not admissible, the trial judge abused his discretion in allowing its admission and a review of the evidence demonstrates that said incompetent evidence probably caused the rendition of an improper verdict.

Further, the complained of testimony was cumulative of other evidence. First, as to the testimony relating to statements by Finney about his intent to leave Bickley a million dollars, Finney's will was admitted into evidence. The will states, "In that contract, [Bickley] and I agree that in this Will I would, and I do leave her One Million and xx/100 Dollars ($1,000,000.00)." Also, Gibbs's counsel called Bickley to testify and elicited testimony that Bickley knew she was going to get a millions dollars if she performed certain conditions. Second, as to the testimony relating to statements by Finney about Bickley's performance, Gibbs's attorney called Bickley to the stand and elicited the following testimony:

| | |
|---|---|
| Gibbs's Counsel: | Okay. You claim Mr. Finney was never upset with you about being gone too much? |
| Bickley: | No, sir. |
| . . . . | |
| Gibbs's Counsel: | Did he, Mr. Finney, ever complain about you not providing companionship to him? |
| Bickley: | No, sir. |
| . . . . | |
| Gibbs's Counsel: | And did [Finney] ever complain about you being unavailable? |
| Bickley: | No, sir. |
| . . . . | |
| Gibbs's Counsel: | And you don't really think Mr. Finney complained to anyone else about you being gone? |
| Bickley: | Not that I know of. |

| | |
|---|---|
| Gibbs's Counsel: | And except for the time that you spent with your kids every other weekend, your claim is that you spent 100 percent of your time and attention with Mr. Finney; is that right? |
| Bickley: | Yes, sir. |
| . . . . | |
| Gibbs's Counsel: | And you claim you didn't start ignoring Mr. Finney at all? |
| Bickley: | No, sir. |
| Gibbs's Counsel: | And you claim Mr. Finney was satisfied with the conversation time he had with you? |
| Bickley: | Yes, sir. |
| Gibbs's Counsel: | And [Finney] was satisfied with the companionship you provided him? |
| Bickley: | Yes, sir. |

Accordingly, we conclude that even if the trial court erred when it overruled Gibbs's hearsay objections, Gibbs has not shown that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See McCraw*, 828 S.W.2d at 757. Issue three is decided against Gibbs.

### D. Admission of Evidence in Violation of Dead Man's Rule—Texas Rule of Evidence 601(b)

In issue four, part (a), Gibbs argues the trial court erred when it overruled her objection to testimony that she claims violates Texas Rule of Evidence 601(b), the Dead Man's Rule. *See* TEX. R. EVID. 601(b). Gibbs specifically contends the following:

> [Bickley] cannot satisfy the corroboration requirement which would allow her to testify regarding [Finney's] statements, and [Bickley] is thus incompetent, under the [Dead Man's] Rule, to testify regarding the same. Although [Bickley] will argue that she offered evidence corroborating her testimony that is subject to the [Dead Man's] Rule, such evidence is inadmissible and therefore does not satisfy the corroboration requirement imposed by the [Dead Man's] Rule. Specifically, the corroborating evidence offered by [Bickley] constitutes inadmissible hearsay.

Bickley responds that Gibbs waived the application of the Dead Man's Rule because her counsel called Bickley to testify.

The Dead Man's Rule provides, in part:

> In civil action by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any oral statement by the testator . . . unless that testimony is corroborated or **unless the witness is called at the trial to testify thereto by the opposite party[.]**

TEX. R. EVID. 601(b) (emphasis added). When the party entitled to the protection of the statute calls the adverse party to the stand and asks about a transaction with or statement by the decedent, the statute is waived as to that transaction. *Lewis v. Foster*, 621 S.W.2d 400, 403 (Tex. 1981). The record shows that Gibbs's counsel called Bickley to testify. However, we are unable to determine whether Gibbs waived the application of the Dead Man's Rule because neither Gibbs nor Bickley specifies the testimony that violates the Dead Man's Rule.

Also, Bickley argues that Gibbs waived this issue for appeal because she does not identify the specific evidence that she claims should have been excluded under the Dead Man's Rule. We agree with Bickley. An appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record." TEX. R. APP. P. 38.1(i). Gibbs's counsel called Bickley to testify. That direct testimony and cross-examination encompasses approximately eighty-three pages of the reporter's record. Later, Bickley's counsel called Bickley to testify. That direct testimony and cross-examination encompasses approximately one hundred thirty-four pages of the reporter's record. Given the length of Bickley's testimony, we are unable to determine the specific testimony that Gibbs argues violates the Dead Man's Rule.

We conclude Gibbs has waived this issue for appeal. *See* TEX. R. APP. P. 38.1(i); *see also Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). Issue four, part (a), is decided against Gibbs.

### E. *Admission of Evidence that Violates Parol Evidence Rule*

In issue four, part (b), Gibbs argues the trial court erred when it overruled her objection to testimony that she claims violates the Parol Evidence Rule. She argues that "any evidence offered by [Bickley] to prove a meaning other than the usual and ordinary meaning of the terms used in the Contract, is barred by the rules excluding the introduction of extrinsic evidence to interpret unambiguous contracts and/or wills." She also argues "the testimony that should have been excluded is referenced on pages 7–8 and 18–19 of her brief."

An appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record." TEX. R. APP. P. 38.1(i). The reporter's record is seventeen volumes and approximately two thousand nine hundred pages long. We have no duty to search this voluminous record for "any evidence" offered to prove the meaning of terms used in the will. *See Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 237 (Tex. App.—Dallas 2000, pet. denied) (appellate court has no duty to search voluminous record without guidance from appellant to determine whether assertion of reversible error is valid). The only evidence Gibbs specifies, through reference to the statement of facts in her brief, appears to be Bickley's and Ramey's testimony. We addressed that testimony in our analysis of issue three. We have already concluded that even if the trial court erred when it overruled Gibbs's hearsay objections to that testimony, Gibbs has not shown that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. The same conclusion applies with respect to Gibbs's parol evidence objections. Issue four, part (b), is decided against Gibbs.

## III. IMPROPER JURY ARGUMENT

In issue two, Gibbs argues the trial court erred when it denied her motion for new trial because Bickley's jury argument was improper and incurable. She claims that Bickley's counsel

repeatedly and successfully prevented discovery and the admission of evidence of the gifts Finney gave to Bickley. Then, during closing argument, Bickely's counsel argued that Bickley had received no benefits from Finney. Bickley responds that Gibbs has waived this issue because Gibbs did not object at trial and the alleged harm caused by the jury argument was curable.

### A. Applicable Law

In rare cases, an improper jury argument is considered incurable and an objection is not required. *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008). To prevail on a claim that an improper jury argument was incurable, the appellant must generally show that the argument, by its nature, degree, and extent, constituted such error that an instruction from the court or retraction of the argument by counsel could not have removed its effects. *Living Ctrs.*, 256 S.W.3d at 680–81; *Wilhoite v. Sims*, 401 S.W.3d 752, 763 (Tex. App.—Dallas 2013, no pet.). The previously recognized types of incurable argument have included: (1) appeals to racial prejudice; (2) the use of inflammatory epithets such as "liar," "fraud," "faker," "cheat," and "imposter"; and (3) unsupported charges of perjury and witness tampering. *Living Ctrs.*, 256 S.W.3d at 681; *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840 (Tex. 1979); *Wilhoite*, 401 S.W.3d at 763; *Cottman Transmission Sys., L.L.C. v. FVLR Enters., L.L.C.*, 295 S.W.3d 372, 380 (Tex. App.—Dallas 2009, pet. denied). The test is the amount of harm caused by the argument:

> whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.

*Living Ctrs.*, 256 S.W.3d at 681 (quoting *Tex. Emp'rs' Ins. Ass'n v. Haywood*, 153 Tex. 242, 266 S.W.2d 856, 858 (1954)); *Wilhoite*, 401 S.W.3d at 763.

### B. Application of the Law to the Facts

Gibbs contends the following statements by Bickley's counsel during closing argument were incurable and prejudicial:

> We wouldn't be here today, because if [Bickley] had known [Finney] was dissatisfied, she sure wouldn't have spent three years of her life caring for a man and living with a man, period.
>
> I haven't asked [Bickley] this, but I don't figure she's going to stay around and live with a man and take care of a man and know she's not going to get a million dollars when he dies.
>
> What was [Bickley's] detriment? She has spent three years of her life living with a man, caring for a man. And now, she has the wonderful opportunity to be in this courtroom and fight this case for the last year and a half trying to get that million dollars.
>
> If [Bickley] had known [Finney] was dissatisfied, and if—once she found out what he was dissatisfied about, if she could not have made his satisfied, I don't think she would be—I don't think she would have stayed around another year or so, knowing she wasn't going to get paid, period.
>
> I don't know of any folks at all that go to work every day without the expectation of getting paid, and that's exactly what [Bickley] did for three years.
>
> [The trial judge] uses the words "did she comply," and "you're instructed that the intention of the Testator," who was Jack Finney, "must be found, in the last analysis, in the words of the Will, and you may consider Jack Finney's situation, the circumstances existing when the Will was executed, and other material facts existing at the time the Will was executed," and we've gone over what those were.

The argument in this case did not involve any of the previously recognized forms of incurable argument. *See Wilhoite*, 401 S.W.3d at 763. This argument was not so inflammatory or prejudicial that a withdrawal of the argument or an instruction by the trial court to disregard the argument could not have cured any harm from it. Accordingly, we conclude the trial court did not err when it denied Gibbs's motion for new trial because Bickley's jury argument was curable.

Issue two is decided against Gibbs.

## IV. MOTIONS FOR JUDGMENT NOTWITHSTANDING
## THE VERDICT AND NEW TRIAL

In issue five, Gibbs argues the trial court erred when it denied Gibbs's motions for judgment notwithstanding the verdict and new trial because there was legally and factually insufficient evidence to support the jury's answer to question no. 1. Gibbs claims the preponderance of the evidence established that Bickley did not fully perform the conditions precedent in the will and the "only evidence" that supports the jury's answer to question no. 1 was improperly admitted. Bickley responds that Gibbs called Bickley to testify and elicited testimony relating to her performance of the conditions precedent in Finney's will. Also, Bickley contends that "Gibbs makes no effort to show or explain *how* the evidence is [factually] insufficient." (Emphasis in orig.). In addition, Bickley argues there was conflicting evidence and the jury chose to credit the testimony that she cared for Finney and he was satisfied with her care.

### A. Standard of Review

When examining a legal sufficiency challenge, an appellate court reviews the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). An appellant attacking the legal sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See Dow*, 46 S.W.3d at 241. The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. The fact finder is the sole

judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819.

In a factual sufficiency review, an appellate court considers and weighs all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). An appellant attacking factual sufficiency with respect to an adverse finding on which it had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow*, 46 S.W.3d at 242. An appellate court sets aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The appellate court may not substitute its judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407.

### B. Application of the Law to the Facts

Gibbs argues "the only evidence before the jury that would arguably support [the jury's] answer to Question Number 1 was inadmissible and incompetent hearsay, parol evidence[,] and/or other testimony in violation of the Dead Man's Rule, which must be disregarded by this Court in its review of the evidence." She also maintains that "Excluding said illegally admitted evidence, but considering all of the other probative evidence admitted in a light most favorable in support of the jury's answer to Question No. 1, said remaining evidence is still legally, or alternatively, factually insufficient, to support the affirmative answer to Question No. 1." Specifically, Gibbs argues the testimony of Johnson, Turner, Steed, Waldroup, and Ramey relating to statements made to them by Finney have no probative value and cannot be considered as evidence to support the jury's answer to question no. 1.

In issue three, we concluded that the testimony of Johnson, Turner, Steed, and Ramey was cumulative of other evidence, in particular, Bickley's testimony. That testimony relates to

–23–

Bickley's performance and care of Finney and is described in our analysis of issue three. Further, in issue four, part (a), Gibbs acknowledges that Bickley's testimony was corroborated by other witnesses.

We conclude the trial court did not err when it denied Gibbs's motions for judgment notwithstanding the verdict and new trial because there was legally and factually insufficient evidence to support the jury's answer to question no. 1. Issue five is decided against Gibbs.

## V. CONCLUSION

Gibbs has not shown that the trial court erred when it excluded evidence of lifetime gifts, transfers, benefits, and remuneration that Finney gave to Bickley. Also, even if the trial court erred when it overruled Gibbs's hearsay and parol evidence objections, Gibbs has not shown that the errors were reasonably calculated to cause and probably did cause the rendition of an improper judgment. In addition, Gibbs waived her complaint that the trial court erred when it overruled her objections to testimony that she claims violates the Dead Man's Rule. Finally, the evidence is legally and factually sufficient to support the jury's answer to question no. 1.

The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

111182F.P05

–24–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE ESTATE OF R.H. "JACK" FINNEY,
JR., DECEASED

No. 05-11-01582-CV

On Appeal from the County Court at Law,
Hunt County, Texas
Trial Court Cause No. 16,563.
Opinion delivered by Justice Lang.  Justices
Francis and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee AMANDA KAY BICKLEY recover her costs of this
appeal from appellant JEAN TOWNSEND GIBBS.

Judgment entered this 30th day of August, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE