**AFFIRMED; Opinion Filed March 7, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00277-CV

### IN RE: THE COMMITMENT OF RICHARD PAUL DAFFT

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV1770002**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Nowell
Opinion by Justice Nowell

This appeal involves a civil commitment pursuant to the Sexually Violent Predator Act. A jury found Richard Paul Dafft to be a sexually violent predator as defined in section 841.003 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003. The trial court ordered Dafft committed until his behavioral abnormality changes to the extent he no longer is likely to engage in a predatory act of sexual violence. *See id.* § 841.081. In two issues, Dafft argues the trial court erred by overruling his objection under Texas Rule of Evidence 614 to an expert witness for the State remaining in the courtroom during his testimony and permitting the State impermissibly to shift its burden through questioning during its case-in-chief. We affirm the trial court's judgment.

FACTUAL BACKGROUND

At the time of trial, Dafft was forty-eight years old and had been incarcerated for thirteen years for sexually assaulting his stepdaughter.[1] Dafft lived with his girlfriend and her fourteen-year-old daughter. Approximately one year after moving into the woman's home, Dafft began sexually assaulting the girl. He assaulted her more than ten times before she reported his actions. Dafft received ten years deferred adjudication community supervision. While on deferred, Dafft was charged with indecent exposure and failure to register as a sex offender. Dafft's community supervision was revoked and he was incarcerated.

Approximately two years before Dafft was scheduled to be released, the State filed a civil petition to commit him for involuntary treatment and supervision as a sexually violent predator. *See id.* §§ 841.001 –.151. The civil case proceeded to trial on December 5, 2017.

The record details Dafft's extensive history of deviant sexual conduct. The parties are familiar with that evidence and, in the absence of any challenge to sufficiency, we see no reason to detail it here. The record supports Dafft's testimony that there are "countless victims" of his acts and he does not control his sexual impulses. At trial, the State asked Dafft: "And the reality is that there are several things – in fact, hundreds of things that you have done criminally and sexually in which you just haven't been caught for; is that right?" Dafft confirmed that was correct.

Multiple therapists treated Dafft in individual and group therapy sessions, including during a two-and-a-half-year period he spent at an inpatient facility. Dafft testified he learned "quite a bit" in sex offender treatment, but chose not to apply it. He did not lack control; he chose not to control his sexual desires. Dafft manipulated his therapists and had a long history of lying, including to his family. Dafft testified he struggled to see people as real people and he does not

---

[1] Dafft testified the girl he sexually assaulted was his stepdaughter. However, from the record, it appears the girl's mother was Dafft's girlfriend. For consistency with the record, we will refer to the girl as his stepdaughter.

feel anything for other people. He understood those are "kind of psychopathic thoughts and feelings." Dafft testified he was diagnosed with chronic depression, PTSD, borderline personality disorder, and social anxieties. Notes from one of Dafft's therapists reflected a belief Dafft is at a high risk to reoffend and a continuing threat to the community. Approximately one year before trial, Dafft acknowledged if he were to live with a teenage girl again, there is a high risk he would reoffend.

The State hired forensic psychologist Dr. Randall Price to determine whether Dafft has a behavioral abnormality. Price reviewed court documents from Dafft's juvenile and adult convictions, police offense reports and investigations, victim statements, Dafft's prison file, results from assessments performed by other treatment providers, treatment and evaluation progress notes compiled while he was in prison sex-offender treatment, and Dafft's deposition. When Price interviewed and evaluated Dafft on August 14, 2017, he also completed the Static-99R, an actuarial test. Dafft scored a "5" on the Static-99R, meaning he has an above average risk of reoffending and being convicted for the offense. Price used another assessment, the Hare Psychopathy Checklist Revised ("Hare PCL-R"), to evaluate Dafft. The Hare PCL-R assesses the presence or absence of certain personality traits and behaviors consistent with psychopathy. Dafft's score on the PCL-R did not show he has psychopathy, although he has several anti-social personality traits.

Price concluded Dafft "clearly meets the criteria for a behavioral abnormality as defined in the Texas Health and Safety Code where there is a condition that predisposes him to sexually reoffend, including in a sexually violent fashion." Price believes Dafft is "highly likely" to reoffend. Price testified Dafft has the following disorders as defined by DSM-V[2]: major depressive disorder in partial remission, exhibitionistic disorder in partial remission, voyeuristic disorder in partial remission, sexual masochism disorder in partial remission, transvestic disorder in partial

---

[2] We presume the DSM-V is the Diagnostic and Statistical Manual of Mental Disorders.

remission, and traits and features of antisocial personality disorder. The depression is in partial remission due to medication and the others are in partial remission due to living in a controlled environment. Price testified Dafft's "sexual deviance . . . is of grave concern to me. . . . He's a very disturbed person sexually."

LAW & ANALYSIS

In his first issue, Dafft asserts the trial court erred by allowing Dr. Price to remain in the courtroom during his testimony. After opening statements and before he testified, Dafft invoked evidentiary rule 614 to exclude Price from the courtroom, but the trial court denied Dafft's request. With exceptions not being argued here, Texas Rule of Evidence 614 states that upon a party's request, the court must order witnesses excluded so they cannot hear other witnesses' testimony. TEX. R. EVID. 614. The purpose of Rule 614 is to minimize witnesses tailoring their testimony in response to that of other witnesses and to prevent collusion among witnesses testifying for the same side. *See Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 116 (Tex. 1999).

On appeal, the State concedes the trial court's ruling was in error, but asserts it did not result in an improper judgment. Because the State concedes error, we will assume the trial court erred by not excluding Price and consider whether the error resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1) (reversible error in civil cases).

Dafft argues Price used his testimony about uncharged offenses to increase his score on the Static-99R and used his testimony to conclude Dafft shows no remorse or guilt for his crimes. Although Price heard Dafft's testimony about offenses for which he was not apprehended, charged, or convicted, the evidence shows Price testified based on his pre-trial assessment of Dafft. Price testified Dafft scored a "5" on the Static-99R based on the assessment Price performed on August 14, 2017. A completed copy of the Static-99R assessment dated August 14, 2017, is in the record and shows Dafft's score of "5." At trial, the State asked Price whether the uncharged offenses

–4–

would have increased Dafft's score had Price known about them. Price replied that the score would only increase if the offenses were charged. The evidence shows uncharged offenses did not raise Dafft's score on the Static-99R, and Price did not increase Dafft's score after hearing his testimony.

When scoring the Hare PCL-R assessment, which Price completed on September 20, 2017, Price assessed a score of "2" to the prompt "Lack of Remorse or Guilt," meaning Dafft lacks remorse or guilt for his actions. At trial, the State asked Price whether Dafft's testimony "that he intellectually understands, but he doesn't really feel what other people feel" relates to lack of remorse or guilt. Price confirmed it is related, but he did not change the score based on Dafft's testimony.

Based on this record, Dafft has not shown how hearing his testimony influenced or changed Price's opinions or allowed collusion among the witnesses. Under the facts and the arguments before us in this case, we cannot conclude any error by the trial court resulted in an improper judgment. We overrule Dafft's first issue.

In his second issue, Dafft argues the trial court erred by allowing the State to make an impermissible burden-shifting comment during its case-in-chief. While cross-examining Price, Dafft's counsel confirmed Price's belief that Dafft has a behavioral abnormality. He continued questioning Price:

> [Dafft's Counsel]: Now, that is only an opinion, right?
> [Price]: It is an opinion.
> [Dafft's Counsel]: 100 psychiatrists or 100 psychologists could look at the same information you looked at and 50 could say BA, 50 could say no BA, correct?
> [Price]: It's possible.

During its redirect examination of Price, the State referenced those questions:

> [State]: And you told counsel for the other side when he asked you the question, if 100 people could see Mr. Dafft, 50 of them may say he doesn't have a behavioral abnormality; is that right? He asked you that and you said, yeah, I guess.

–5–

[Price]: As I remember, he asked me if that was possible and I said that was possible.

[State]: So if that were the case, since you testified before for the Defense,[3] they could call any of those 50, right, to say he didn't have a behavioral abnormality?

[Price]: I'm sorry. I don't understand the question.

[State]: My question is . . . they asked you if you've ever testified that someone didn't have a behavioral abnormality and [defense counsel] gave you a percentage that if 100 people were called, 50 percent, it's possible, would say [Dafft] didn't have a behavioral abnormality.

Did you hear him say that?

Dafft's counsel interrupted the questioning and objected that the State was switching the burden to Dafft. The trial court overruled the objection and questioning continued.

[State]: That's my question, Dr. Price. . . . If someone believed he didn't have a behavioral abnormality as an expert, they could come and testify and tell this jury that; [is] that correct?

[Dafft's Counsel]: Judge, I'm going to object. She's switching the burden to the Respondent. That's improper for the Prosecution.

The Court: Overruled.

[Price]: The answer to that is, yes, they could have done that.

We do not consider whether the trial court erred by overruling Dafft's objections. Even if we assume the trial court erred, we conclude any error did not result in an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). A judgment will not be reversed based on the admission or exclusion of evidence unless the appellant establishes that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. App.—Dallas 2013, no pet.); *Fitzerman v. Classic Americana, LLC*, No. 05-15-00528-CV, 2016 WL 1450165, at *5 (Tex. App.—Dallas Apr. 13, 2016) (mem. op.), *supplemented*, No. 05-15-00528-CV, 2016 WL 1701345 (Tex. App.—Dallas Apr. 27, 2016, no pet.) (mem. op.). "Reversible error does not usually occur in connection with evidentiary rulings unless the appellant demonstrates the whole case turned on the particular

---

[3] Price testified on behalf of the defense in other cases.

evidence excluded or omitted." *Finney*, 424 S.W.3d 608, 612. When reviewing whether evidence was properly admitted or excluded, the appellate court must review the entire record. *Id*.

Dafft argues the asserted error probably caused the rendition of an improper judgment "because it distracted the jury from any deficiencies it could have legitimately seen in the State's case." However, Dafft does not identify what these purported deficiencies are or explain how the jury's failure to recognize the deficiencies potentially caused the rendition of an improper judgment. Even having reviewed the entire record, we cannot conclude the whole case turned on the testimony admitted over Dafft's objections or the admitted testimony probably caused the rendition of an improper judgment. We overrule Dafft's second issue.

CONCLUSION

We affirm the trial court's judgment.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

180277F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN RE: THE COMMITMENT OF
RICHARD PAUL DAFFT, Appellant

No. 05-18-00277-CV

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. CV1770002.
Opinion delivered by Justice Nowell.
Justices Schenck and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 7th day of March, 2019.