**Affirm and Opinion Filed August 21, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00022-CV**

**DEEPA CHINTAM A/K/A DEEPA ADEMA, Appellant**
**V.**
**BHOOMANNA CHINTAM, Appellee**

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-19-15178**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Breedlove

Appellant Deepa Chintam a/k/a Deepa Adema (Adema) brought suit against her former spouse appellee Bhoomanna Chintam (Chintam) requesting an order under Texas Family Code § 9.201 to award her certain real property and bank accounts that were not divided in the parties' divorce decree. After a bench trial, the trial court denied the relief requested and rendered judgment for Chintam. Concluding that there was sufficient evidence to support the trial court's determination that the final decree disposed of all property subject to division, we affirm.

BACKGROUND

Adema and Chintam were married on May 7, 2006. They were divorced by final decree dated August 1, 2017, after entering into a mediated settlement agreement (MSA) on July 18, 2017. Under the MSA, the parties "agree[d] to compromise and settle the claims and controversies between them, including . . . any and all property and debt division disputes." The parties further agreed that "[t]he assets will be divided as stated on attached Exhibit A incorporated herein."

In paragraph 9(g) of the MSA, Chintam represented that "any community interest in any real estate or assets located in India is on Exhibit A attached herein." On Exhibit A, under "Assets, Real Estate, India Property," there is only one item listed: "Land in Armoor, Nizamabad District, Telangana, India i/n/o Deepa Chintam." Exhibit A also lists four bank accounts held in the ICICI Bank in India.

In paragraph 10(b) of the MSA, the parties agreed that "[a]ny undisclosed asset is awarded to the other party." The MSA also includes a handwritten paragraph 9(h), "Any non disclosed assets awarded to the party who was unaware of the asset."

The parties' Final Decree of Divorce signed on August 1, 2017, provides in part:

### *Agreement of Parties*

The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the agreement of the parties as contained in this Final Decree of Divorce.

The agreements in this Final Decree of Divorce were reached in mediation with Laura Roach on July 18, 2017. This Final Decree of Divorce is stipulated to represent a merger of a mediated settlement agreement between the parties. To the extent there exist any differences between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

In the final decree, Chintam was awarded one piece of real property in India[1] and the funds in nine bank accounts. Four of the bank accounts are held in the ICICI Bank in India and their account numbers match the ICICI account numbers on Exhibit A to the MSA. Adema was awarded six pieces of real property in Texas and the funds in five United States bank accounts. The decree does not mention any other real property in India or any other ICICI accounts.

On July 31, 2019, Adema brought suit against Chintam alleging that he "affirmatively hid from [her], and failed to disclose his interest in or control of, [certain] property, all in an effort to defraud her." She specified five pieces of real property and two ICICI bank accounts in her petition.[2] All are located in India. Adema sought division of the property or a money judgment in lieu of a division.[3]

---

[1] The decree's description of this real property is similar, but not identical to, the "India Property" identified in the MSA. As neither party challenges this award, however, we do not consider it further.

[2] After setting forth the detailed property descriptions in her operative petition, Adema designated the real property at issue as the Krishnayapalem Property, the Pangra Property, the Miyapur Property, the Bongloor Property, and the Mubarak Nagar Property. We need not repeat the detailed descriptions here, and will refer to these properties collectively as "the India Properties" or individually by Adema's designations unless otherwise noted. The ICICI bank accounts (Bank Accounts) are identified by numbers ending in 0397 and 7901.

[3] On June 1, 2021, Adema filed her operative first amended petition, adding allegations that Chintam breached the divorce decree "by misrepresenting Ms. Adema's interest in the properties" and "by failing to admit that such properties should be awarded to her as provided in the decree." She also alleged that Chintam transferred three properties in violation of the trial court's standing order. As we discuss below, however, Adema's suit was for division of undivided property under family code Chapter 9, Subchapter C

The case proceeded to a bench trial on October 5, 2021. In a judgment dated October 26, 2021, the trial court ruled that Adema's petition should be denied in its entirety. The court ordered that Adema take nothing. This appeal followed.

## ISSUES

Adema asserts seven issues challenging the trial court's judgment that we summarize as follows:

1.   The trial court erred by failing to award the property or its proceeds to Adema because the property was not divided in the divorce decree;

2.   The trial "resulted in a violation of due process or fundamental lack of fairness" arising from Chintam's bad faith and the trial court's erroneous rulings;

3.   The trial court erred by permitting Chintam's lawyers to testify as fact witnesses despite Adema's objection;

4.   The trial court reversibly erred by admitting certain exhibits into evidence;

5.   There is insufficient evidence to support certain findings of fact;

6.   Certain findings of fact are against the great weight and preponderance of the evidence; and

7.   There is insufficient evidence to support certain of the trial court's conclusions of law.

---

(Post-Decree Division of Property), §§ 9.201–9.205, not for enforcement of the decree under Chapter 9, Subchapter A (Suit to Enforce Decree), §§ 9.001–9.014. Accordingly, trial was limited to issues pertinent to Subchapter C.

## STANDARDS OF REVIEW

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019).[4] When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings. *Ramsey v. Davis*, 261 S.W.3d 811, 815 (Tex. App.—Dallas 2008, pet. denied).

We review a trial court's legal conclusions de novo. *Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex. App.—Dallas 2007, no pet.). We evaluate those conclusions independently to determine whether the trial court correctly drew the conclusion from the facts. *Id.*

A party challenging the legal sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When a party challenges the legal sufficiency of the evidence to support an adverse finding on which it did

---

[4] Chintam contends we review challenges to the legal and factual sufficiency of the evidence under the standard of review for family law cases, where legal and factual sufficiency challenges do not constitute independent grounds for asserting error. *See, e.g., In re C.G.*, 261 S.W.3d 842, 848 (Tex. App.—Dallas 2008, no pet.). But where, as here, the trial court "acts primarily as a factfinder," appellate courts normally review its determinations under the legal and factual sufficiency standards, as we do here. *Interest of L.J.H.*, No. 05-21-00183-CV, 2021 WL 4260769, at *16 (Tex. App.—Dallas Sept. 20, 2021, no pet.) (mem. op.).

not have the burden of proof, the party must demonstrate that no evidence supports the finding. *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam).

In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the finding, indulging every reasonable inference supporting it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. The "final test for legal sufficiency" is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* "A legal sufficiency challenge fails if more than a scintilla of evidence supports the finding." *Tex. Outfitters, LLC, Ltd.*, 572 S.W.3d at 653.

In contrast, in determining factual sufficiency, we "must consider and weigh all of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. A party challenging the factual sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate on appeal that the evidence is so weak or the adverse finding "is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* When an appellant challenges the factual sufficiency of the evidence on an adverse finding on which it did not have the burden of proof, the party must demonstrate there is insufficient evidence to support the finding. *Hoss v. Alardin*, 338 S.W.3d 635, 651 (Tex. App.—Dallas 2011, no pet.).

In applying these sufficiency standards, we remain mindful that this Court is not a factfinder. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). In a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the testimony's weight. *Tate v. Commodore Cty. Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied). The trial court may believe one witness and disbelieve others and may resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

The admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. App.—Dallas 2013, no pet.). A judgment will not be reversed based on the admission or exclusion of evidence unless the appellant establishes that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* When reviewing whether evidence was properly admitted or excluded, the appellate court must review the entire record. *Id.*

### APPLICABLE LAW

If a Texas court "failed to dispose of property subject to division in a final decree of divorce or annulment even though the court had jurisdiction over the spouses or over the property," a former spouse may file suit "to divide property not divided or awarded to a spouse in a final decree of divorce or annulment." TEX. FAM. CODE ANN. § 9.201(a). As the post-divorce petitioner, Adema bears the burden to prove that the trial court did not consider or dispose of the India Properties and the

Bank Accounts in the final divorce decree. *See Brown v. Brown*, 236 S.W.3d 343, 349 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (petitioner in statutory post-divorce action bore burden to prove that divorce court did not consider or dispose of retirement benefits and accrued bonuses in final decree).

"At its core, Subchapter C [Family Code §§ 9.201–9.205] allows property that is no longer community property to be treated by a court as if it still were, so that it can be divided by the just-and-right standard." *S.C. v. M.B.*, 650 S.W.3d 428, 440 (Tex. 2022). But parties may not "relitigate issues already resolved by the final divorce decree." *Id.* at 441. "A judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property." *Id.* (internal quotation omitted). "Thus, if a divorce court with jurisdiction grants a final decree that addresses property, nothing in Subchapter C provides any escape from the rule that a wrongful division can be challenged only by appeal." *Id.* "The trial court may not change the decree's division of property even if it contains substantive legal error." *Id.* (internal quotation omitted).

**DISCUSSION**

**1. Evidentiary rulings**

Before we address the trial court's findings of fact and conclusions of law, we first turn to Adema's third and fourth issues, which challenge the trial court's evidentiary rulings. In her third issue, Adema complains that the trial court erred by

permitting Chintam's lawyers to testify as fact witnesses. In her fourth issue, Adema complains that the trial court erred by admitting defense exhibits DX 2 (Chintam's deposition errata sheet), DX 9 (index of documents produced at the mediation), DX 12 (Adema's Inventory and Appraisement in the divorce case), DX 13 (Wysocki declaration), and DX 14, 21, and 22 (India property records). We conclude that the trial court did not abuse its discretion by admitting into evidence documents that were produced at mediation, but it was an abuse of discretion to allow counsel to testify as a fact witness regarding what transpired during the confidential mediation process.

Chintam's attorney was offered as a fact witness to testify regarding whether Adema's counsel was provided information regarding the India Properties during the confidential mediation process. Obviously aware that the communications he sought to disclose were confidential, prior to the date of trial, counsel for Chintam sent a letter to Adema's counsel requesting that she waive the confidentiality privilege that protected from disclosure the communications among Adema, her attorneys, and the mediator. At the bottom of the letter requesting waiver of the privilege, counsel for Chintam hand wrote, "Unless you're scared."[5] Adema's counsel rightfully declined Chintam's request.

---

[5] This letter was admitted into evidence at trial as Rebuttal Ex. D-01.

At trial, Adema objected to the introduction of testimony by Chintam's counsel as a fact witness, citing Texas Disciplinary Rule of Professional Conduct 3.08(a). Rule 3.08 "prohibits the lawyer from acting as both an advocate and a witness in an adjudicatory proceeding." *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (per curiam) (orig. proceeding); *see also Southtex 66 Pipeline Co., Ltd. v. Spoor*, 238 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (counsel for party was "inappropriate person" to provide testimony on contested matter). Chintam's counsel argued that Adema waived the right to object to his testimony because he was listed as a fact witness in discovery responses, and also argued Rule 3.08 did not apply because his client (Mr. Chintam) did not object to his testifying as a fact witness.

We reject the notion that Rule 3.08 can so easily be waived. The Texas Rules of Professional Conduct reflect the self-regulating nature of the legal profession.[6] They are imposed without court order and any discovery response that seeks to violate such rules need not be objected to.[7] Simply put, parties in litigation are

---

[6] *See, e.g.,* TEX. DISCIPLINARY RULES PROF'L CONDUCT, Preamble ¶ 8, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A ("The legal profession has a responsibility to assure that its regulation is undertaken in the public interest rather than in furtherance of parochial or self-interested concerns of the bar, and to insist that every lawyer both comply with its minimum disciplinary standards and aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.")

[7] Rule 3.08(a)(5) contemplates that in some instances a lawyer may testify if he promptly notified opposing counsel that he expected to testify in the matter and disqualification of the lawyer would work substantial hardship on the client. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(5). There is nothing in the record to support an application of the exception here. To the contrary, after listing his counsel as a fact

–10–

expected to comply with all rules of professional conduct because they exist to preserve fairness within our system of justice. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 4 (combining the roles of advocate and witness can unfairly prejudice the opposing party because "[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.").

Taunting that only a "scared" litigant would refuse to offer her counsel's testimony at trial runs afoul of Rule 3.08, especially when the subject of the testimony includes the mediation process. Mediation is a valuable dispute resolution tool that works because parties approach the process with confidence that their interactions and communications will remain confidential. Civil practice and remedies code § 154.073(a) unequivocally provides that "a communication relating to the subject matter of any . . . dispute made by a participant in an alternative dispute resolution procedure . . . is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding."

---

witness, Chintam filed motions to quash Adema's deposition notices so that his counsel would not be compelled to testify at a deposition.

It was an abuse of discretion for the trial court to allow counsel to divulge as a fact witness what transpired during the confidential mediation process. Parties cannot engage with candor if trial courts have the discretion to break the confidential bond that protects the mediation process, especially when it is the attorney who offers such testimony as an improper fact witness. *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 796 (Tex. App.—Dallas 2013, pet. denied) (party could not use alleged discussions from mediation to dispute terms of settlement agreement).

Turning to the exhibits in question, we conclude the trial court did not abuse its discretion by admitting DX 2, 9, 12, 14, 21, and 22 into evidence. Although participants' communications made during mediation are confidential, not subject to disclosure, and may not be used against a participant, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(a), written material used in or made a part of a mediation procedure "is admissible or discoverable if it is admissible or discoverable independent of the procedure," *id.* § 154.073(c). *See also Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 795 (Tex. App.—Dallas 2002, pet. denied) (citing statute).

The trial court correctly admitted DX 12 as an opposing party's statement under rule of evidence 801(e)(2). The trial court admitted DX 2, the errata sheet to Chintam's deposition, after a showing that it was served within the time period allotted under the rules of civil procedure. *See* TEX. R. CIV. P. 203.1(b) (changes to deposition by witness). DX 9, the index of documents produced at mediation, as well

as DX 14, 21, and 22, documents Chintam contends he produced at mediation, were not confidential in and of themselves. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(c) (permitting admission of written material used in mediation if it is independently admissible). Accordingly, we sustain Adema's third issue and overrule her fourth issue.

## 2. Division of the India Properties and Bank Accounts

### A.     The India Properties

In her fifth, sixth, and seventh issues, Adema challenges the trial court's finding that the India Properties were not part of the community estate at the time the parties entered into the Mediated Settlement Agreement.

We conclude there is legally and factually sufficient evidence to support the trial court's findings that the Bongloor, Mubarak Nagar, and Mayapur properties were sold in March and April 2017 and consequently were no longer included in the community property to be divided.

Plaintiff's Exhibit (PX) 5 consists of property records from India showing Chintam's sale of the Bongloor property on April 26, 2017. PX 7 and PX 16 are India property records showing Chintam's sale of the Mubarak Nagar property on March 30, 2017. PX 6 is an India property record showing Chintam's sale of the Mayapur property on March 27, 2017. There is no evidence of Chintam's continued ownership of these properties after the dates reflected in those exhibits.

Although we have concluded that it was an abuse of discretion for the trial court to admit Chintam's attorney's testimony regarding the mediation process, there was other evidence supporting the trial court's findings. Chintam testified that he sold the properties prior to the mediation, and the record reflects that certain of the documents included in DX 13 were admitted or identified during Chintam's testimony. Accordingly, there was evidence to support findings that the India Properties were sold prior to the mediation, without considering counsel's testimony or other evidence of communications made in mediation. *See Estate of Finney*, 424 S.W.3d at 612 (judgment will not be reversed on admission or exclusion of evidence unless trial court's error probably caused rendition of improper judgment).

Turning to the Pangra and Krishnayapalem properties, we note that the record is far less clear, but it contains sufficient evidence to support the trial court's findings. Adema relies on PX 2, an India encumbrance certificate showing Chintam's ownership of the Krishnayapalem property as of March 23, 2019, almost two years after the divorce. PX 2 also shows that Chintam acquired the Krishnayapalem property on August 12, 2015, during the marriage. Adema also relies on a 2018 development agreement for the Krishnayapalem property showing Chintam as its owner. This agreement was admitted into evidence as PX 3, and provides in part that "there is no claim or interest of any nature to anybody else" to the property. Chintam, in turn, relies on DX 22, an April 15, 2017 "Award" in a "pre litigation case" filed against him in India "for registration for regular Sale Deed in

–14–

favour of the petitioner on the basis of the agreement of Sale" of the Krishnayapalem property by Chintam to a third party on November 25, 2016, before the divorce was filed.

Similarly with respect to the Pangra property, Adema relies on PX 4, India property records showing conveyance of the property to Chintam in 2013, and PX 31, showing that Chintam did not sell the property to a third party until August 29, 2018. Chintam relies on DX 21, a record dated April 24, 2017, showing transfer of the Pangra property to a third party prior to the mediation.

Adema argues that the trial court erred by admitting DX 21 and DX 22 into evidence because Chintam failed to comply with rule of evidence 203, "Determining Foreign Law." *See* TEX. R. EVID. 203. We review the trial court's determination of foreign law de novo. *Long Dist. Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 351 (Tex. 2001). Under Rule 203, the court may determine the law of a foreign country if the party who intends to raise an issue on that law gives notice and furnishes materials he intends to use to prove the foreign law at least 30 days before trial. TEX. R. EVID. 203; *Long Distance Int'l, Inc.*, 49 S.W.3d at 351.

Chintam, however, did not attempt to establish the validity or legality of the property transfers reflected in DX 21 and DX 22 under the laws of India. *Cf. Long Distance Int'l, Inc.*, 49 S.W.3d at 351 (issue was whether plaintiff's contracts with Mexican customers violated Mexican law). As with Adema's exhibits reflecting Chintam's transfers of the Bongloor, Mubarak Nagar, and Mayapur properties—

–15–

India records also admitted into evidence without application of evidence rule 203—DX 21 and DX 22 were relevant to the question whether the Krishnayapalem and Pangra properties were community properties divided under the MSA. The transfers' enforceability under India law was not at issue. Further, Chintam testified at trial about the 2017 sales of the Krishnayapalem and Pangra properties, providing additional evidence to support the trial court's findings that the properties were sold prior to the July 18, 2017 mediation date.

We affirm the trial court's factual findings that the India Properties were sold prior to the mediation date. However, even if we were to conclude that there was insufficient evidence to support those findings, the trial court's conclusion that there was no property to distribute pursuant to § 9.201 is nevertheless affirmed because the MSA left nothing to divide.

Adema asserts that the trial court's refusal to grant her relief under § 9.201 is in error because she was unaware of the India Properties' existence at the time she signed the MSA. Chintam asserts that even if the India Properties were part of the community estate, prior to signing the MSA Adema expressed a suspicion that they may exist, and therefore, Chintam was not required to disclose them.

The parties' dispute requires a closer look at the terms of the MSA and how it was incorporated into the final decree. A mediated settlement agreement meeting the family code's requirements "is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d

615, 618 (Tex. 2012); TEX. FAM. CODE ANN. § 153.0071(d), (e). The agreement is binding on the parties if it (1) "provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation," (2) is signed by each party to the agreement, and (3) "is signed by the party's attorney, if any, who is present at the time the agreement is signed." TEX. FAM. CODE ANN. § 153.0071(d)(1)–(3).

Because an MSA is a contract, we look to general contract-interpretation principles to determine its meaning. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a), providing that "If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract."). We must ascertain the parties' intentions as expressed in the writing itself, and we give terms their plain, ordinary, and generally accepted meaning unless the writing shows that the parties used them in a technical or different sense. *Loya*, 526 S.W.3d at 451.

"Unlike with other settlements in the family law context, the trial court is not required to determine if the agreed property division is 'just and right' before approving an MSA that satisfies the statutory requirements." *Highsmith v. Highsmith*, 587 S.W.3d 771, 775 (Tex. 2019) (per curiam). "In other words, a statutorily compliant MSA is binding on both the parties and the trial court, subject to a few narrow exceptions" involving the safety and welfare of children. *Id.* at 775

and n.3. "The trial court has no authority to enter a judgment that varies from the terms of the mediated settlement agreement." *Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.).

In interpreting the MSA, we look to "the true intentions of the parties as expressed in the writing itself." *Loya*, 526 S.W.3d at 451. As we have explained, the MSA expressly provides, "Husband[ ] represents any community interest in any real estate or assets located in India is on Exhibit A attached herein," and "[a]ny undisclosed asset is awarded to the other party." Chintam expressly represented that there was no community interest in any India real estate other than the plot listed on Exhibit A. By so doing, he agreed that any other community interest in India real estate was awarded to Adema. He is bound by that agreement. TEX. FAM. CODE ANN. § 153.0071(d); *Milner*, 361 S.W.3d at 618.[8]

Adema asserts that under § 9.201, any community properties not disclosed on Exhibit A must be awarded to her post-final decree. We disagree. Adema's proposed interpretation of the MSA ignores its paragraph 9(h), which states, "[a]ny non disclosed assets [are] awarded to the party who was unaware of the asset" and 10(b), which states "[a]ny undisclosed asset is awarded to the other party." The India Properties were not disclosed on Exhibit A, and consequently, under the MSA, any

---

[8] Chintam also argues, and the trial court concluded, that Adema's suit is barred by res judicata. We note that res judicata does not bar partition of community property that was not divided in divorce. *See Busby v. Busby*, 457 S.W.2d 551, 554 (Tex. 1970). Given our analysis and disposition of Adema's issues, however, we pretermit further discussion of this argument. TEX. R. APP. P. 47.4.

–18–

community interest in the India Properties was awarded to Adema in the final decree. In other words, if the India Properties were part of the community estate at the time the MSA was signed, and Chintam failed to disclose them on Exhibit A, then they were awarded to Adema in the final decree as "undisclosed assets."

Accordingly, the parties' disagreements regarding Adema's knowledge or Chintam's duty to disclose before and during the mediation are not dispositive. Because we have concluded that sufficient evidence supports the trial court's fact findings that Chintam did not own the India Properties on the date the MSA was signed, we affirm the trial court's conclusion of law that the India Properties were not subject to division under family code § 9.201.[9]

Turning now to Adema's first issue, she contends that she is entitled to either ownership of the India Properties or a money judgment in lieu of a division because the India Properties were either fraudulently concealed from her or fraudulently transferred during the divorce proceeding. Because Adema brought her claims pursuant to Section 9.201 of the Family Code, the trial court correctly limited its inquiry at trial to "whether or not . . . these properties were properly divided or

---

[9] The trial court concluded that "Adema's cause of action is Section 9.201 of the Texas Family Code." On appeal, Adema contends this conclusion is "false" because she asserted a cause of action for breach of contract in her first amended petition, in addition to her claim under § 9.201. Adema pleaded that Chintam breached the decree "by misrepresenting Ms. Adema's interest" in the India Properties "and failing to admit that such properties should be awarded to her as provided in the decree." However, Adema did not plead for enforcement or clarification of the decree under Subchapter A of Chapter 9; she pleaded for division of undivided assets under Subchapter C. *See* TEX. FAM. CODE ANN. §§ 9.001–9.014 (Subchapter A, "Suit to Enforce Decree"). Subchapter A's provisions "do not apply to existing property not divided on divorce, which are governed by Subchapter C [§§ 9.201–9.205]." *Id.* § 9.004. Accordingly, the trial court correctly did not consider whether such relief was available to her.

divided at all" in the final decree. Under Section 9.201, the trial court did not, and could not, consider whether any of the properties at issue had been fraudulently transferred or concealed during the divorce proceeding. *See S.C.*, 650 S.W.3d at 440 (nothing in family code §§ 9.201–9.205 "provides any escape from the rule that wrongful division can be challenged only by appeal" of the divorce decree); *see also Chu v. Hong*, 249 S.W.3d 441, 445–45 (Tex. 2008) (claims of "waste, fraudulent transfer, or other damage to community property are claims belonging to the community itself, so they must be included in the trial court's just-and-right division of community property upon divorce").

## B. Bank accounts

Findings of fact 27, 28, and 59–62 and conclusions of law 1–4 under "Bank Accounts" address the two ICICI bank accounts at issue. As part of her sixth and seventh issues, Adema challenges the legal and factual sufficiency of the evidence to support these findings and conclusions.[10]

In the challenged conclusions of law, the trial court concluded that no evidence was presented at trial as to the balance in either of the Bank Accounts, either at the time of the MSA or "at any time." Adema does not cite any evidence in the record regarding the amounts in the accounts. Although deposition testimony of

---

[10] Findings of fact 60 and 61 are more detailed descriptions of the Bank Accounts. Although these findings are listed in Adema's statement of issues, she does not provide any specific complaint about them and they do not appear to be probative on any issue she has raised. Accordingly, we do not discuss them further.

the parties admitted into evidence at trial appears to reflect that certain funds were transferred out of the accounts prior to the mediation, the amounts are not clearly stated and the relevant exhibits do not appear to be attached to the deposition testimony. Consequently, there is some evidence supporting conclusions of law 1-4 pertaining to the Bank Accounts.

In findings 27 and 28, the trial court found that Adema listed the Bank Accounts on her inventory in the divorce proceeding. Findings 59 and 62 provide:

59.    On June 22, 2017, prior to the divorce, the Associate Judge signed an Associate Judge's report that stated that DEEPA ADEMA claims to have records of ICICI 7901 and ICICI 0397 which she will disclose.

62.    Prior to the parties signing the mediated settlement agreement, counsel for the parties discussed the existence of both bank accounts at issue.

As to fact findings 27 and 28, Adema's inventory (DX 12) lists both accounts. The inventory shows the accounts' values as "unknown" because "No records were produced by H" and "Husband" is listed as "Primary" for both accounts. Consequently, there is some evidence to support findings 27 and 28, and Adema does not cite any evidence to the contrary. Adema argues, however, that the trial court erred by overruling her hearsay objection to the admission of DX 12 into evidence. At trial, Chintam responded to Adema's hearsay objection by arguing that DX 12 was an admission by a party-opponent, and we conclude the trial court did not abuse its discretion by admitting DX 12 on this basis. *See* TEX. R. EVID.

801(e)(2) (opposing party's statement, made by the party or by a person authorized by the party, is not hearsay).

As to finding 59, PX 75 is an Associate Judge's report dated June 22, 2017, providing in part: "W claims to have records of ICICI 7901 and ICICI 0397 which she will disclose. H will then make efforts to obtain statements for said accounts from bank." Accordingly, there is some evidence to support finding 59, and Adema does not cite any evidence to the contrary.

As to finding 62, any evidence supporting it—evidence of conversations that took place during mediation—was not admissible. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(a); *Hydroscience Techs., Inc.*, 401 S.W.3d at 796. Although we conclude there is no admissible evidence to support this finding, we also conclude that the MSA's express provisions control regardless of what matters might (or might not) have been discussed at mediation. *See Garcia-Udall*, 141 S.W.3d at 332 (trial court lacks authority to enter judgment that varies from MSA's terms).

In the MSA, Chintam and Adema agreed that "Parties are each awarded their own bank accounts unless stated differently on Exhibit A." Neither ICICI 7901 nor ICICI 0397 is listed on Exhibit A. And as with the real properties, Chintam represented that any community interest in any "assets located in India" "is on Exhibit A," and the parties agreed that "[a]ny undisclosed asset is awarded to the other party." Given these agreements, the MSA disposed of the Bank Accounts in one of three ways:

1. If Chintam owned the Bank Accounts, they were awarded to him, because nothing was "stated differently on Exhibit A";

2. Similarly, if Adema owned the Bank Accounts, they were awarded to her, because nothing was "stated differently on Exhibit A"; or

3. If the Bank Accounts were community property, they were awarded to Adema because they were "located in India" and not disclosed on Exhibit A.

Regardless of which of these options is correct, the Bank Accounts were divided in the MSA and the final decree. Accordingly, family code § 9.201 does not apply, and the trial court correctly denied relief to Adema under that provision. *See S.C.*, 650 S.W.3d at 441 (parties may not relitigate issues already resolved by the final divorce decree, even if the trial court's division contains substantive legal error). For these reasons, we decide against Adema the portions of her sixth, seventh, and eighth issues challenging the legal and factual sufficiency of the evidence to support the trial court's findings and conclusions regarding the two ICICI bank accounts.

### 3. Fundamental fairness and due process

In her second issue, Adema asserts that the trial court lacked fundamental fairness and denied her due process by (1) denying her the right to cross-examine witnesses, (2) failing to allow testimony from Sandeep Kumar, (3) permitting Chintam to use privilege as both a sword and a shield, (4) failure to sanction Chintam for his bad faith conduct in discovery and at his deposition, and (5) failure to provide a reasonable amount of time under the circumstances for trial.

The first and fifth of these complaints arise from the trial court's imposition and enforcement of time limits for trial. This Court recently rejected a similar complaint in *Interest of B.W.S.*, where a parent contended the trial court deprived her of her constitutional due process rights by placing a one-hour time limit on her presentation of evidence at a modification hearing. No. 05-20-00343-CV, 2022 WL 2712494, at *3 (Tex. App.—Dallas July 13, 2022, no pet.) (mem. op.). We explained that "[e]very trial court has the inherent power to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* (internal quotations and citations omitted). "That inherent power, together with applicable rules of procedure and evidence, give trial courts broad, but not unfettered, discretion in handling trials." *Id.* However, "[t]he control given the trial judge must be exercised reasonably, and a party must be given a fair opportunity to present its case so that the factfinder may ascertain the truth." *Id.*

As the trial court stated, the only issue before it was whether or not the India Properties and the Bank Accounts were divided under the MSA and the decree. *See* TEX. FAM. CODE ANN. § 9.201. Both parties offered evidence to support their contentions on this issue. The trial court was bound by the MSA; it had no discretion to make any disposition of property that varied from the parties' agreement and the subsequent decree incorporating it. *See Milner*, 361 S.W.3d at 618. The trial court heard testimony from both Adema and Chintam and admitted numerous exhibits they offered. Further, the court consulted with the parties about the time limits at the

outset of trial. We conclude the trial court did not abuse its discretion in imposing and enforcing time limits for trial. *See Interest of B.W.S.*, 2022 WL 2712494, at *3.

Similarly, the trial court could have concluded that Kumar's testimony, offered to show that Chintam "deliberately tried to obfuscate the ownership and transfer of these properties" and to confirm the "close working relationship" between Chintam and the persons to whom he transferred the India Properties, was not probative to the sole issue before it under family code § 9.201. The exclusion or admission of evidence is within the trial court's broad discretion. *Estate of Finney*, 424 S.W.3d at 612.

Adema next complains of the trial court's failure to sanction Chintam for his bad faith conduct in discovery. We review the trial court's denial of sanctions for an abuse of discretion. *See Estate of Howells*, No. 05-20-00720-CV, 2022 WL 1222826, at *3 (Tex. App.—Dallas Apr. 26, 2022, no pet.) (mem. op.) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). In matters committed to the trial court's discretion, we determine whether the ruling was unreasonable or arbitrary or whether the court acted without reference to any guiding rules or principles. *Id.* In deciding whether the denial of sanctions constitutes an abuse of discretion, we examine the entire record and review the conflicting evidence in the light most favorable to the trial court's ruling while drawing all reasonable inferences in favor of the court's judgment. *Id.* The party seeking sanctions has the burden of showing her right to relief. *Id.*

Citing *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993), Chintam asserts Adema failed to preserve this issue for appellate review because she did not obtain a ruling on her motion for sanctions. In *Remington Arms*, the court held that "the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct," and that the plaintiff waived any objections to incidents of pretrial misconduct by "failing to request a pretrial hearing on the alleged discovery abuse." *Id.*

Here, in contrast to *Remington*, Adema filed her motion for sanctions before trial, and sought and obtained a hearing before the associate judge. The associate judge took the matter under advisement and did not rule, despite Adema's subsequent written request for a ruling. Adema's counsel again requested a ruling at the outset of trial. The trial court refused to rule, explaining that the motion was "not properly before me right now," the request was "actually eating into your trial time," and "I don't think it's productive for me to try to address this today."

Nonetheless, Adema was also required to object to the trial court's refusal to rule in order to preserve her complaint for appellate review. TEX. R. APP. P. 33.1(a)(2)(B). After the trial court made the above-quoted statements, Adema's counsel did not make any objection to the court's refusal to rule, instead re-urging the request for sanctions in a motion for new trial. Absent an objection to the trial court's failure to rule, Adema has not preserved her complaint. *Id.*; *see also Old*

*Republic Ins. Co. v. Sisavath*, No. 05-07-01391-CV, 2008 WL 4695491, at \*2 (Tex. App.—Dallas Oct. 27, 2008, no pet.) (mem. op.) (where record did not reflect objection to trial court's refusal to sign default judgment, complaint was not preserved for appeal).

Adema further complains that the trial court erred by permitting Chintam "to use privilege as both a sword and a shield." After Chintam listed his counsel in his discovery responses as persons with knowledge of relevant facts, Adema noticed the listed attorneys for deposition. The attorneys then moved to quash the notices on the ground that the only information they had about the matter resulted from their representation of Chintam. At trial, however, Chintam's current and former counsel were permitted to testify as fact witnesses over Adema's objections. Further, they were permitted to testify about conversations that allegedly took place during the mediation.

We need not address again here whether the trial court erred by admitting into evidence Chintam's counsel's testimony because that issue has already been resolved in favor of Adema. Although we conclude that it was in error for the trial court to allow Chintam's counsel to serve as a fact witness at trial on the issue of what transpired during the confidential mediation, this error did not result in an improper judgment. *See* TEX. R. APP. P. 44.1 (to be reversible, error must have probably caused rendition of improper judgment). As we have discussed, there was admissible evidence to support the trial court's findings, including Chintam's

testimony and the exhibits showing Chintam's pre-divorce transfers of the India Properties.

For these reasons, we decide Adema's second issue against her.

## 4. Conclusion

There was sufficient admissible evidence to support the trial court's findings and conclusions that the India Properties were no longer community property at the time of the parties' MSA and divorce, and to support the trial court's findings and conclusions regarding the Bank Accounts. Accordingly, the trial court did not err by concluding that Adema did not establish her right to relief under family code § 9.201. We have further concluded that the trial court's rulings admitting or excluding evidence were within its discretion and that the trial court did not deny Adema due process. Accordingly, we decide Adema's issues against her.

CONCLUSION

The trial court's judgment is affirmed.

/Maricela Breedlove/

220022f.p05
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEEPA CHINTAM A/K/A DEEPA ADEMA, Appellant

No. 05-22-00022-CV     V.

BHOOMANNA CHINTAM, Appellee

On Appeal from the 256th Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-19-15178. Opinion delivered by Justice Breedlove. Justices Nowell and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Bhoomanna Chintam recover his costs of this appeal from appellant Deepa Chintam a/k/a Deepa Adema.

Judgment entered this 21st day of August, 2023.